# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MIRACLE LEATHERWOOD, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 09-00410-CB-N |
| MOBILE HOUSING BOARD and RICHARD ROWE, | ) |
| Defendants. | ) |

## OPINION and ORDER

In this action, Plaintiff Miracle Leatherwood has brought employment discrimination claims based on sexual harassment and retaliation along with related state law tort claims against the Mobile Housing Board and her former supervisor, Richard Rowe. Defendant Mobile Housing Board has filed a motion for summary judgment on all of Plaintiff's claims against it. After considering the motion, briefs and evidentiary materials filed by the parties, the Court finds that, with one exception, summary judgment is not appropriate because there are genuine issues of material fact that must be resolved by a jury.

### FACTUAL SUMMARY[1]

Miracle Leatherwood worked as a painter assigned to the Modernization Staff of the Defendant Mobile Housing Board (MHB) from 2005 to 2007. In June 2007, Leatherwood was assigned to work at Central Plaza Towers, where she was supervised by building maintenance

---

[1] This factual summary represents only a small portion of the summary judgment evidence and is intended only to provide background for the Court's legal analysis. The disputed facts relevant to each particular issue will be discussed in more detail below. All facts and the inferences arising from them are viewed forth in the light most favorable to the non-moving party. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1182 (11th Cir. 1997).

supervisors Dan Gatwood and Richard Rowe. In mid-June, Rowe came into a bathroom where Leatherwood and another employee were painting, propped the door open and said: "You wouldn't want me to give you mouth-to-mouth, would you?" At the time, Leatherwood thought this comment was strange, though not necessarily sexual. On July 3, 2007, Rowe came into the place where Leatherwood was painting and watched her work for thirty minutes to an hour. He eventually asked her if she knew what the sound of the paint roller meant and told her that it meant the roller was dry. Leatherwood understood this to be a sexually suggestive comment. Rowe pulled Leatherwood into a meeting room and told her he found her very attractive. He told her he was bold and that when he wants something he goes for it. He also said that she was very attractive and that he could not control himself. Rowe offered Leatherwood money in exchange for sex, stating that as a single mother he assumed she was having financial difficulties. Leatherwood found these comments inappropriate. The following week Rowe was watching Leatherwood work when a tenant told him that Leatherwood did a good job and should be hired as a permanent worker. Rowe responded to the tenant and Leatherwood: "Miracle has more pull than me right about now. Ain't that right, Miracle?"

On July 12, 2007, Leatherwood was summoned to the MHB Human Resources Office where she reported Rowe's comments and actions. An investigation ensued, and MHB initiated a pre-disciplinary hearing against Richard Rowe. After taking testimony, the hearing officer concluded that there was absence of "indisputable evidence" and resolved the matter by issuing a warning letter to Rowe and reassigning Leatherwood to another location to remove her from Rowe's supervision. As a result of her reassignment, Leatherwood filed an EEOC charge against the MHB. On October 22, 2007, the Modernization Staff to which Leatherwood was assigned was sent to work at Central Plaza Towers where Rowe continued to work as a supervisor. After

coming into contact with Rowe, Leatherwood asked permission from her supervisor to leave the building so she would not have to work around Rowe. Permission was granted. Leatherwood left work at lunch and called Human Resources to say that she did not want to work in an unsafe environment. Three days later, MHB began the process of terminating Plaintiff's employment.

**LEGAL ANALYSIS**

**Summary Judgment Review**

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id*. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992), (internal citations and quotations omitted). Finally, "the summary judgment

3

rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Chapman*, 229 F.3d at 1026.

**Issues Presented**

The complaint asserts the following claims against MHB: (1) a sexual harassment claim under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*; (2) a Title VII retaliation claim; (3) a state law invasion-of-privacy claim; (4) a state law claim based on the tort of outrage; and (5) a state law negligent supervision claim.[2] MHB argues that it cannot be held liable for any Title VII violation because it was not Leatherwood's employer. As to the sexual harassment claim, MHB argues that summary judgment is also appropriate because Rowe's conduct was not sufficiently severe or pervasive to amount to a hostile work environment. Even if sexual harassment occurred, MHB argues that it cannot be held liable because it had a sexual harassment policy in place and took prompt action when notified about Rowe's objectionable conduct. With regard to the retaliation claim, MHB claims that it terminated Leatherwood for time and attendance issues, not because of any protected activity. MHB also argues that Plaintiff's Title VII claim fails because she cannot demonstrate irreparable harm. Finally, MHB argues that Leatherwood does not have sufficient evidence to prove each state law claim. Leatherwood counters with evidence and legal support for each of her claims.

---

[2] The complaint certainly could have been written more clearly. In the first count, entitled "Claim I-Title VII," Plaintiff asserts two causes of action. First, it alleges that MHB "manufactured a reason to terminate her," presumably Plaintiff's retaliation claim. The same count also contains a sexual harassment claim against MHB. Claim I is followed by an unnumbered cause of action entitled "Claims-Invasion of Privacy." The two remaining causes of action are "Claim IV--Tort of Outrage" and "Claim V-Negligent Supervision." There are no claims numbered II or III.

**Title VII Claims**

*Whether MHB was a Title VII Employer*

MHB argues that it is entitled to summary judgment on both Title VII claims because it was not Plaintiff's employer. Title VII prohibits "employers" from engaging in specific unlawful employment practices,[3] such as sexual discrimination and retaliation. 42 U.S.C. §§ 2000e-3 & 2000e-4. "[P]ersons aggrieved" by unlawful conduct may file EEOC charges and, depending on the resolution of those charges, a civil action against the employer. 42 U.S.C. § 2000e-5. The existence of an employer/employee relationship for Title VII purposes is a question of federal common law.[4] *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 339 (11th Cir. 1982). Courts must look to the "economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee." *Id.* The employer's right to control the worker's performance is the most important factor. *Id.* at 340 (citing *Spirides v. Reinhardt*, 613 F.2d 826, 831-32 (D.C. Cir. 1979)). Other factors to consider relate to the "economic realities" of the situation:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

---

[3] The statute also prohibits other entities, such as employment agencies, labor organizations and job training programs, from engaging in lawful employment practices

[4] The statute itself provides no definition of "employer." and defines an employee simply as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

*Id.* (quoting *Spirides*, 613 F.2d at 832.)

In this case there is evidence from which a jury could find that MHB controlled Leatherwood's performance and was, in a real sense, Plaintiff's employer. Most importantly, there is evidence that MHB controlled her hiring, supervision and termination. Leatherwood was contacted by an MHB employee about a job opening at MHB and went to MHB where she was interviewed and filled out paperwork. She was hired at MHB and instructed to go to ACO/WillStaff, a temporary employment agency, where she filled out additional paperwork. She was supervised by Defendant Rowe and other MHB employees. She received performance evaluations from MHB, and MHB made the decision not to renew her contract. Furthermore, a number of "economic reality" factors also favor Plaintiff. Her job title itself, "carpenter helper," indicates a job that requires supervision. She did not work independently but was assigned to MHB's Modernization staff . The work was performed at MHB sites during forty-hour work weeks.[5] In sum, whether MHB was Plaintiff's employer under Title VII is an issue that must be resolved at trial.

### *Sexual Harassment Liability: Hostile Work Environment & the Faragher Defense*

Sexual harassment is a form of sex-based discrimination prohibited by Title VII. *See*, *e.g.*, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (forcing employee to work in sexually hostile work environment constitutes Title VII violation). In two related decisions-- *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)--the Supreme Court clarified the two types of sexual harassment actionable under Title VII. First, when an employee suffers a tangible employment action as a result of the

---

[5] According to the evidence, forty-hour work weeks were the practice, though Plaintiff did not always work forty hours.

employee's refusal to submit to a supervisor's sexual demands, such conduct amounts to sexual discrimination. *Ellerth*, 524 U.S. at 753. Second, if no tangible employment action has occurred, then the conduct violates Title VII only if it was so severe or pervasive as to alter the terms and conditions of employment, i.e., a hostile work environment. *Faragher*, 524 U.S. at 786; s*ee also Walton v. Johnson & Johnson Serv., Inc.*, 347 F.3d 1272, 1279 (11th Cir. 2003).

MHB first contends that it cannot be held liable for sexual harassment because the conduct giving rise to this action was not sufficiently severe and pervasive to create a sexually hostile work environment.[6] As noted above, the Supreme Court has recognized that sexual harassment in the workplace "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (internal quotations and citations omitted). The standards that define a sexually hostile work environment are designed to separate the "ordinary tribulations of the work place" from the "extreme" conduct that amounts to a change in the terms and conditions of employment. *Id.* A hostile work environment is one that is both "objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 788. Whether a work environment is hostile is determined by looking at "all of the circumstances 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id*. at 787-88 (quoting *Harris v. Forklift Systems, Inc,.* 510 U.S. 17, 23 (1993)).

---

[6] This argument ignores the possibility that Plaintiff's claim might also be premised on a tangible employment action. In its response, Plaintiff asserts that the harassment resulted in a tangible employment action. Since Defendant sought summary judgment only as to the hostile work environment issue, the Court does not consider the viability of the sexual harassment/tangible employment action claim.

7

MHB's argument is sprinkled with quotes about "isolated and sporadic incidents" and "simple teasing [and] offhand comments" being insufficient to sustain a hostile work environment claim. What Defendant fails to do, however, is to explain how the actions of the harasser in this case could be considered mere isolated and sporadic teasing or offhand remarks. Rowe supervised Plaintiff for a little more than a month. Four incidents occurred in less than two weeks. The possibility that three of these could have been mere innocent or offhand comments is dispelled by the fourth incident. Rowe explicitly offered to pay Plaintiff to have sex with him and justified his proposition with comments about his boldness and his inability to control himself. When viewed in this context, Rowe's comments--about giving "mouth-to-mouth" to Plaintiff and another female coworker, about the dry paint roller (after watching Plaintiff work for a long period of time) and about Plaintiff having more pull than him in determining whether she became a permanent employee—are not necessarily isolated or inoffensive remarks. A jury could easily find Rowe's conduct to be both objectively and subjectively offensive.[7]

Because Rowe was a supervisory employee, MHB is vicariously liable for his conduct. *Faragher*, 524 U.S. at 807. However, in some circumstances an employer may avoid vicarious liability by interposing the affirmative defense set forth by the Supreme Court in *Faragher*.

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. . . The defense comprises two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Id*. The *Faragher* defense does not entitle MHB to summary judgment for several reasons.

---

[7] *See* Leatherwood Dep. 41-44. (Pl's Ex. 1, Doc. 27-1).

First, MHB has completely failed to address a prerequisite to the *Faragher* affirmative defense—the lack of a tangible employment action. Vicarious liability is automatic if the sexual harassment resulted in a tangible employment action. *Walton v. Johnson & Johnson Serv., Inc.*, 347 F.3d 1272, 1280 (11th Cir. 2003). By failing to point to point to evidence that there was no tangible employment action, MHB has failed to meet its summary judgment burden. Consequently, Leatherwood has no burden of proving the existence of a tangible employment action or negating the existence of MHB's affirmative defense.

Even if the *Faragher* defense applied, summary judgment would be inappropriate. The party raising an affirmative defense has the burden of proving that defense by a preponderance of the evidence, *Ellerth*, 542 U.S. at 765, and MHB has wholly failed to meet its burden. The first prong of a *Faragher* defense is composed of two parts—(1) that the defendant took reasonable care to prevent sexual harassment and (2) that the defendant promptly took corrective measures when it learned about it. As evidence of prevention, the Defendant has provided a copy of its policy against sexual harassment, but it has pointed to no evidence that Leatherwood knew about the policy or that the policy was disseminated among its employees.[8] *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000) (dissemination of anti-harassment policy is "fundamental requirement for exercising reasonable care" to prevent sexual harassment.) MHB's evidence that it corrected the situation is open to interpretation. Its solution was to transfer Leatherwood to another location and remove her from contact with Rowe. Yet, shortly after this ostensibly corrective action was taken, Leatherwood was sent to work at Central Plaza Towers where she again came into contact with Rowe. *Faragher's*

---

[8] Defendant says in its brief that the policy was disseminated, but it points to no evidence to support that claim.

second prong requires proof that the plaintiff "unreasonably failed to take advantage of [the employer's] preventive or corrective opportunities." *Faragher*, 524 U.S. at 807. MHB argues that Leatherwood failed to promptly report the harassment. Whether Leatherwood's actions were unreasonable is a question for the jury, especially since there is no evidence that she was aware of MHB's anti-harassment policy or its reporting procedures.

### *Retaliation*

MHB contends that it is entitled to summary judgment on Plaintiff's retaliation claims because it terminated, or declined to renew, Leatherwood's contract due to time and attendance issues, not in retaliation for her sexual harassment complaint.[9] Title VII makes it unlawful for an employer to retaliate against an employee for opposing an unlawful employment practice, such as sexual harassment. 42 U.S.C. § 2000e-3(a). Because Defendant has articulated a legitimate, nondiscriminatory reason for its decision, the burden is on Plaintiff to demonstrate that "the proffered reason is a pretextual ruse to mask retaliatory action." *Raney*, 120 F.3d at 1196. Leatherwood has presented evidence from which a jury could find that a similarly-situated employee was not terminated despite time and attendance issues. (Pl.'s Dep., Doc. 27-1,122-29.) She has also pointed to evidence that the time and attendance issues were not considered a problem until after she complained of sexual harassment. (*Id.* 117-21.) Thus, there is a genuine dispute of material fact as to Plaintiff's retaliation claim.

---

[9] Defendant does not contest Plaintiff's ability to prove a prima facie case of retaliation. A plaintiff bears the burden of demonstrating a prima facie case of retaliation. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998). To do so, she must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action and (3) there was a causal link between the protected activity and the adverse employment action. *Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir. 2004). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its decision. *Raney v. Vinson Guard Service., Inc.*, 120 F.3d 1192, 1196 (11th 1997).

### *Irreparable Harm*

In the complaint, as part of her Title VII claim, Plaintiff alleges that the alleged sexual harassment and retaliation have caused her irreparable harm. MHB seeks summary judgment because, it argues, Plaintiff's injuries are not irreparable. This is a non-issue. The existence of irreparable harm is not a prerequisite for recovery under Title VII. [10]

## State Law Claims

### *Invasion of Privacy*

MHB's summary judgment argument is based on an apparent misperception of the nature of Plaintiff's claim. MHB argue that it is entitled to summary judgment because it did not publicly divulge private information about Leatherwood. However, publicly divulging private information is not the basis of Leatherwood's invasion-of-privacy claim. She contends, instead, that MHB is vicariously liable for the actions of its employee, Richard Rowe, whose sexual harassment constituted an invasion of privacy. Because MHB has not challenged the basis of Plaintiff's invasion-of-privacy claim against Rowe or her vicarious liability theory, it is not entitled to summary judgment on this claim

### *Outrage*

The Alabama Supreme Court has held that the tort of outrage encompasses only "extreme conduct," that is, conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Serv. Co. v. Inmon*, 394 So. 2d 361 (Ala. 1980). "[T]he tort

---

[10] Plaintiff asserts that the allegation of irreparable harm was inserted to support her requests for reinstatement and for injunctive relief. As such, it seems quite unnecessary. Reinstatement is presumptive relief under Title VII. *Nord v. United States Steel Corp.*, 748 F.2d 1462 (11th Cir. 1985). And injunctions which merely require a party to "obey the law" are not permitted. *Hughey v. JMS Dev. Corp., Inc.*, 78 F.3d 1523, 1531 (11th Cir. 1996).

11

of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041 (Ala. 1993). Although "[e]gregious sexual harassment can amount to the tort of outrage," *Henry v. Georgia-Pacific Corp.*, 730 So. 2d 119, 121 (Ala. 1998), the evidence in this case does not rise to that level.

Two Alabama cases provide a gauge by which the conduct in this case can be measured. In *McIsaac v. WZEW-FM Corp., Inc.*, 495 So. 2d 649 (Ala. 1986), Oppenheimer, the radio station owner and plaintiff's boss, took the plaintiff to dinner, asked her to have an affair with him and tried to kiss her. The plaintiff spurned his advances, but Oppenheimer persisted. He asked her to dinner again and also gave her "suggestive looks" and called her about coming to town and having her visit him. The Alabama Supreme Court held that "Oppenheimer's behavior extended to 'mere insults, indignities, threats [or] annoyances,' for which the law will not hold one liable in tort." *Id.* at 651 (quoting Restatement (Second) of Torts § 46, Comment d., (1965)). In *Turner v. Hayes,* 719 So. 2d 1184 (Ala. Civ. App. 1997), *rev'd, in part, on other grounds*, *sub nom Atmore Cmty. Hosp.*, 719 So. 2d 1190 (Ala. 1998), the conduct was even more offensive. The plaintiff alleged that Hayes, her supervisor, had "fondled his genital area in her presence," touched her and other female employees "under their armpits near their breasts," "put his hands on her waist and rubbed against her as he passed through a doorway," "touched her leg," "frequently questioned her about her 'private life,'" "frequently asked her to meet him somewhere after work for 'other than business purposes,'" "uttered sexual innuendos to her," and "tried to look up her skirt." *Id.* at 1187. The Alabama Court of Civil Appeals upheld the grant of summary judgment in favor of the defendants on this claim, stating:

> In recognizing the tort of outrageous conduct, our supreme court made it clear that it is a limited remedy to be applied only in flagrantly egregious circumstances.

> Although we in no way condone Hayes's alleged conduct, we conclude, after reviewing the evidence in the light most favorable to Turner, that Hayes's alleged behavior was not so extreme that it rises to the level necessary to establish a cause of action for the tort of outrageous conduct.

*Id.*

In the case at hand, Rowe asked plaintiff to have sex with him in exchange for money. He also made comments that were arguably sexual nature on three other occasions. This is akin to the conduct in *McIsaac* and far less egregious than the conduct in *Turner*. In both of those cases, the plaintiff's outrage claim was rejected. The same outcome is required here. MHB is entitled to summary judgment as to Plaintiff's cause of action based on the tort of outrage.

### *Negligent Supervision*

In some circumstances, an employer may be held liable for negligent supervision based on an inadequate anti-harassment policy and/or a failure to adequately investigate and correct sexual harassment. *See Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 987 (Ala. 1989). These matters are disputed in this case.[11]

### CONCLUSION

In this case there are material and genuine factual disputes that preclude summary judgement as to all claims except one. Defendant's motion for summary judgment is **GRANTED, in part,** as to Plaintiff's outrage claim. As to all other claims, the motion for summary judgment is **DENIED**.

**DONE** and **ORDERED** this the 4th day of August, 2010.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[11] See the vicarious liability discussion *infra* at 8-9.